## SAMPLE FURNITURE SHOPS, Inc., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4812.

Circuit Court of Appeals, Fourth Circuit.

Oct. 17, 1941.

Walter E. Barton, of Washington, D. C. (Joseph R. Curl, of Wheeling, W. Va., on the brief), for petitioner.

Carolyn E. Agger, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and Michael H. Cardozo, iv, Sp. Assts. to the Atty Gen., on the brief), for respondent.

Before PARKER and NORTHCOTT, Circuit Judges, and CHESNUT, District Judge.

## PER CURIAM.

The Commissioner of Internal Revenue made an assessment against the Sample Furniture Shops, Inc., a West Virginia corporation, as transferee of the assets of Patrick King for his unpaid income tax amounting to $3,584.37 for the calendar year 1937. The corporation petitioned the Board of Tax Appeals for review which, after hearing, affirmed the Commissioner's determination with a minor adjustment, finding a deficiency due from the transferee in the amount of $3,538.70. The corporation here petitions for review of that determination.

The statutory basis for the transferee's liability is Section 311(a) (1) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code, § 311(a) (1), which imposes upon a transferee of property of a taxpayer, the liability, at law or in equity, for the tax (including interest) imposed upon the transferor by Title 1 (Income Tax) of the Revenue Act, § 101 et seq., 26 U.S.C.A. Int.Rev.Code, § 101 et seq.

From the findings of fact made by the Board, it appears that Patrick King had been conducting a retail furniture business in Wheeling, West Virginia for some years prior to October 29, 1937, and shortly prior thereto, he had proposed to open another similar store in Youngstown, Ohio and had stocked it with furniture of the value of $15,000 to $20,000, no part of which had been paid for. On October 29, 1937, King formed a West Virginia corporation to continue the business and at once transferred to it the stock of the Youngstown store, and issued to himself and wife 99 of the 100 issued shares of the corporation's capital stock of the par value of $100 per share. The corporate resolution of that date recited that the corporation purchased the assets of the business, and in consideration therefor authorized the issuance to King of sufficient capital stock to compensate him for his equity in the business "after closing of the books and accounts December 31, 1937"; and the corporation assumed the "liabilities of P. King, doing business as the Sample Furniture Shops, 16—16th St.". After December 31, 1937, King also transferred the stock and fixtures and equipment of the Wheeling store to the corporation without issuance of any additional shares of stock. King's equity in the business was estimated by him to have been $20,000 to $24,000 in excess of his liabilities.

The corporation was almost immediately in financial difficulties, because in February 1938, some of its creditors were substituted as directors of the corporation, and early in May of the same year, it made a general assignment for the benefit of creditors. The record does not disclose the result of the liquidation, nor a list of the liabilities of the corporation or of King. The latter had no assets of any value as of December 31, 1937, except the shares of stock which had been issued to him, and apparently he had no personal debts other than the tax liability.

**92**

King filed a tentative income tax return for 1937 prior to March 15, 1938, which was prepared for him by the accountant of the corporation, then under management of the creditors. $75 was paid on account of the estimated amount by the check of the corporation, and charged to King's account. Thereafter King filed a completed return which disclosed a net income of $30,515.06, on which a tax in the amount of $3,627.05 was shown to be due. The return also showed that (with the exception of an item of $381.74 received by King as salary from the corporation) his whole income for 1937 consisted of the net profit of his Wheeling furniture business in the amount of $31,208.14.

■■■ The conclusion of the Board that the corporation was liable as transferee at law was based on its construction of the corporate resolution for the purchase of the assets of King in which the corporation had assumed the "liabilities of P. King, doing business as the Sample Furniture Shops". The Board held that the liabilities so assumed included the personal income tax liability of King. As the Board thus held that the corporation was liable at law, it found it unnecessary to consider the possible liability as transferee in equity. The contention of the corporation here is that this construction of the resolution was erroneous as a matter of law; and that the findings made by the Board do not justify our determination that the corporation was liable as a transferee in equity. The argument in support of the first point is that the proper construction of the resolution necessarily limits the liabilities assumed to those purely incident to the conduct of the business, thus excluding the personal federal income tax liability of King. Ordinarily it is true that where a stranger purchases a business and assumes its liabilities, the latter would not include personal obligations of the vendor not related to the business; but in construing the corporate resolution here involved, which does not clearly exclude King's tax liability, it is entirely permissible to look to the surrounding facts and circumstances of the particular case. In considering these we note, as did the Board, that King's income for 1937 arose (with a minor exception for which adjustment was made by the Board) wholly from the business itself; and the sale was not made to a stranger but to a corporation wholly dominated at the time by King, and under circumstances from which it could well be inferred that the corporation was hardly more than a legal fiction, although the Board made no specific finding on this point. The circumstances also suggest that if King had not intended the corporation to assume his tax liability, which was comparatively substantial in amount, a fraud would have resulted on the federal revenues. The rather slender record affords no explanation of the singular fact that a business which in 1937 produced a net profit of over $30,000, and had an estimated equity of $24,000 at the end of 1937, suddenly thereafter became practically insolvent; and the reasonable inference would seem to be that both King and the corporation were really insolvent at the time of the transfer.

■■■ We are not unmindful that the burden of proof was upon the Commissioner to establish the liability of the transferee; but looking at the findings of fact as made by the Board, supported by the evidence in the record, we are unable to say that its construction of the corporate resolution, that the personal tax liability of King was assumed by the corporation, was erroneous as a matter of law. We therefore affirm the decision of the Board.

Affirmed.